**Law Office of Andrea Paparella, PLLC**

**Phone: 617-680-2400**
**Facsimile: 914-462-3287**
**Email: amp@andreapaparella.com**

**Preferred Mailing Address:**

**10 Federal Street, Suite 28**
**Salem, MA 01970**

**New York Address:**

**134 W. 29th Street, Suite 1001**
**New York, NY 10001-5304**

October 9, 2026

**BY ECF**
The Honorable Joan M. Azrack
United States District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722

Re: Annette Lee v. Northwell Health, Inc. et al.; Case No. 26-cv-03244 (JMA) (SIL)

Dear Judge Azrack:

We represent Plaintiff Annette Lee and respectfully submit this response to Defendants' September 15, 2026 letter requesting a pre-motion conference "or permission to file a motion to dismiss the Amended Complaint." Dkt. No. 16, p. 1.

Ms. Lee's Amended Complaint plausibly pleads a case for unlawful discrimination based on sex, age, race, and national origin, and retaliation for complaining of discrimination.

**1. Lee Pleads Facts That At Least Plausibly Support Unlawful Discrimination And Retaliation.**

Ms. Lee worked for Defendants for over 20 years, starting in June 2021. Dkt. No. 5 (Amended Complaint ("AC")), ¶ 3. She was "uniquely qualified for her role and her service was exemplary throughout her entire tenure at Northwell." Id. Her last role at Northwell was:

(1) Vice President and Dean of Northwell's Elmezzi Graduate School of Molecular Medicine;

(2) Associate Professor in the Institute of Molecular Medicine; and

(3) Director of the Molecular Biology core facility at The Feinstein Institutes for Medical Research.

Id., ¶ 3.

Ms. Lee, now 65, has plausibly that had her career has been destroyed because she rebuffed the sexual advances of a white male colleague and has sufficiently plead that her termination would not have occurred if she was a white male or younger employee. She has also sufficiently plead that it is at least plausible that her termination was because she complained.

After Lee rebuffed the advances of Dr. Peter Hotez, a white man, Dr. Hotez contacted Kevin Tracey, another white man who is the Chief Executive Officer of Feinstein Institutes For Medical Research and President of the Elmezzi Graduate School of Molecular Medicine, and raised an at least preposterous concern about her. AC, ¶ 7. Tracey, Hotez and Lee have known each other for decades. Id. It is at least plausible that Tracey and Hotez and no concern at all about Ms. Lee being a safety problem—especially given they had known her for decades.

It is at least plausible that no one at Northwell believed for a second that Ms. Lee posed any danger. If someone did believe Ms. Lee posed a danger, Northwell would not have allowed Lee to "attend[] an in-house heavily attended scientific seminar" earlier the day she was notified Tracey wanted to meet with her, September 18, 2024. Id., ¶ 74. At that very meeting Tracey said something like "everything will be okay," "this will pass" or something like "we will get through this", at least plausibly showing that nothing had occurred to put Lee's employment in jeopardy.

The clinical psychologist Northwell had Lee meet with cleared Lee to return home alone, further indicating at least plausibly that there was no real concern about Lee. Nevertheless, she was put on leave.

On September 30, 2024, Lee notified Defendants of the background—Lee complained to Defendants: "I am dismayed that my long-time employer seems to be crediting a high-profile man, Peter Hotez, over me, a woman who has dedicated her services to it for over twenty years. I have been an exemplary employee, with an unblemished record." Id., ¶ 106. Ms. Lee complained: "Prior to Dr. Hotez coming to Kevin Tracey with his purported concerns, he had repeatedly made sexual advances toward me that I did not entertain," and "In fact, days before he came to Northwell, on September 17, 2024, Dr. Hotez again told me he loved me. This is just one instance." Id. Ms. Lee requested an investigation. Id. Defendants then terminated Lee's employment about two hours after Lee engaged in protected activity. Id., ¶ 108. Lee was then at least temporarily replaced by a white colleague. Id., ¶ 121.

There is no indication Defendants conducted any investigation, and in facts Defendants at least plausibly showed they outright rejected Lee's request for an investigation when Kathleen Donovan, Chief HR Officer Ambulatory Region & Feinstein Institute for Medical Research, responded: "Our discussions with you are focused only on your actions." Id., ¶ 107.

Meanwhile, when a male colleague had threatened Lee, Defendants did nothing to intervene when Lee complained to senior men about the issue, other than tell Lee to personally deal with it herself. Id., ¶ 133.

This case should move forward, and Lee should be allowed discovery to determine whether Defendants' purported reason for firing Lee was actually the reason rather than a pretextual reason motivated by retaliation for Lee's complaint before the termination, and because of her sex, age, race, and national origin.

At this stage, Plaintiff need only allege facts that plausibly support her claims; she is not required to prove that discrimination or retaliation was the ultimate reason for her termination.

**2. The Law Provides That This Case Should Move Forward To Discovery.**

Defendants argue that Plaintiff's Complaint "is devoid of any allegation that a protected characteristic played a role in the termination decision." Dkt. No. 16, p. 2. But that is incorrect. Plaintiff clearly plausibly pleads that her termination was because a white man who had known Lee and Tracey for decades was disgruntled because Lee would not engage in a sexual relationship with him.

Meanwhile, when a male colleague threatened Lee, Defendants did nothing to intervene.

Defendants also ignore what was happening at the time Lee was put on administrative leave. Three colleagues—a white man and two white women (one significantly younger than Lee)—were unfoundedly ganging up on her and criticizing her, when she was a senior employee of decades with a record of exemplary service.

Regarding retaliation, Defendants' argument that Lee did not engage in protected activity has no merit. Lee very clearly in writing engaged in protected activity. She complained that Northwell was crediting a white male over herself, a dedicated employee with decades of exemplary service.

Defendants' argument improperly seeks to impose an evidentiary burden at the pleading stage. To survive a motion to dismiss, Lee need not prove that Defendants' stated reason for termination was pretextual. Rather, Lee must allege facts plausibly supporting a minimal inference that the challenged employment action was motivated, at least in part, by unlawful discrimination. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84–87 (2d Cir. 2015); Littlejohn v. City of New York, 795 F.3d 297, 311–12 (2d Cir. 2015). That inference may arise from circumstantial evidence, including the sequence of events leading to termination, differential treatment, and other facts that collectively support an inference of discriminatory intent. Vega, 801 F.3d at 87. Accordingly, the Court should evaluate the plausibility of the allegations as a whole, rather than require Plaintiff to establish at the outset that Defendants' proffered explanation is false.

The same is true regarding the retaliation claims.

Lee must plausibly allege that Defendants took adverse action against her because she engaged in protected activity. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015); Belyea v. City of Glen Cove, No. 20-CV-5675 (MKB), 2022 WL 3586559 (E.D.N.Y. Aug. 22, 2022) (Not Reported in Fed. Supp.). A causal connection may be inferred from the temporal proximity between protected activity and the adverse action, as well as other circumstantial evidence supporting retaliatory intent. Vega, 801 F.3d at 90. Moreover, retaliatory motive need not be the sole cause of an adverse action; but-for causation requires only that the adverse action would not have occurred in the absence of the retaliatory motive. Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013).

Moreover, Defendants' response to Ms. Lee's complaint and request for an investigation—refusing to investigate—should also at this stage be viewed not just as plausible unlawful retaliation, but also plausible discrimination. As the allegations support that when a white man raised concerns, Defendants investigated them but then refused to investigate Ms. Lee's concerns.

In sum, Defendants' termination explanation should not be resolved against Plaintiff on a motion to dismiss where the well-pleaded allegations plausibly support retaliation.

Respectfully submitted,

Andrea Paparella

cc: All Counsel of Record (via ECF)